**NEW YORK TYPOGRAPHICAL UNION NO. 6, Petitioner–Appellant, Cross–Appellee,**

v.

**PRINTERS LEAGUE SECTION OF THE ASSOCIATION OF THE GRAPHIC ARTS, Respondent–Appellee, Cross–Appellant.**

**Nos. 31, 104, Dockets 89–9027, 90–7197.**

United States Court of Appeals, Second Circuit.

Argued Sept. 13, 1990.

Decided Nov. 14, 1990.

Daniel Engelstein (Vladeck, Waldman, Elias & Engelhard, New York City, James I. Wasserman, of counsel), for petitioner-appellant, cross-appellee.

Carlyle M. Dunaway, Jr. (Clifton Budd & DeMaria, New York City, of counsel), for respondent-appellee, cross-appellant.

Oppenheimer Wolff & Donnelly, New York City (Joseph J. Vicinanza, Christopher W. Jones, Robert J. Tracy, Thomas M. Gandolfo, of counsel), filed brief of Pandick, Inc. as an amicus curiae.

Before LUMBARD, WINTER, and MINER, Circuit Judges.

LUMBARD, Circuit Judge:

Both the New York Typographical Union No. 6 ("Union") and the Printers League Section of the Association of Graphic Arts ("League") appeal the February 26, 1990 Judgment and Order of the District Court for the Southern District of New York, John M. Walker, Jr., *Judge*, which granted in part and denied in part the Union's petition to compel the League to comply with the procedures for conducting an interest arbitration [2] under the terms of the parties' collective bargaining agreement ("Contract"). We vacate the Judgment and Order and remand the case to the district court for further proceedings.

2. "Interest arbitration" concerns disputes over terms of new or renewal contracts. It differs from "rights arbitration," which involves disputes over the interpretation or application of a contract.

**4**

The Union represents employees engaged in composing room work in New York City metropolitan area printshops; the League is a collective bargaining representative of various employers in the printing and typographical industry. Their dispute arises out of conflicting interpretations of the Contract. The parties disagree about whether the League must submit to interest arbitration regarding Contract amendments to be effective October 4, 1989, whereas the stated expiration date of the Contract itself is October 3.

The dispute began in March 1989, when the Union notified the League that it wished to begin negotiations for amendments to the Contract to be effective October 4. When no agreement was reached regarding the amendments, the Union sought interest arbitration by invoking Union Option B. Under Union Option B, the parties are to submit unresolved proposals for contract improvements to an arbitration panel. The League refused to comply with this procedure.

On July 14, the Union petitioned the district court, pursuant to 9 U.S.C. §§ 4, 5 and 29 U.S.C. § 185(a), to compel compliance. In a Judgment and Order dated February 26, 1990, Judge Walker granted the Union's petition, but only with respect to proposals that relate to terms that become or remain effective after expiration of the Contract, namely, proposals regarding the Contract's income guarantee and discharge reinstatement provisions. He listed the specific portions of the Contract for which proposals could be submitted to interest arbitration, if those proposals concerned income guarantees and discharge reinstatement. Judge Walker denied the petition with respect to proposals to extend the term of the Contract and proposals concerning the wages, hours, and benefits of a successor collective bargaining agreement—except benefit proposals regarding income guarantees and discharge reinstatement.

Both the Union and the League have appealed aspects of the order. The Union urges us to direct interest arbitration under Union Option B with respect to all terms and conditions of the successor contract. The Union also asks us to direct compliance with the Contract's no-reduction clause [3] pending completion of the interest arbitration. In the alternative, the Union asks that interest arbitration be compelled with respect to the Contract terms that become or remain effective after October 3, 1989, and that the determination of those terms and the meaning of the no-reduction provision be resolved by the Designated Arbitrator.

In contrast, the League urges us to vacate the portions of the district court Judgment and Order that granted interest arbitration. Alternatively, the League asks us to direct the district court to determine which, if any, of the Union's specific proposals are arbitrable. As a third alternative, the League seeks affirmance of the entire Judgment and Order.

The Contract provides for interest arbitration, at the option of the Union, if agreement on amendments to the Contract has not been reached and ratified prior to certain dates. In relevant part, Union Option B provides:

The Union may elect to notify the League that it will submit to arbitration any unresolved proposals for Contract improvements, including proposals for wage increases larger than those provided by this Contract. This option may be exercised in connection with Contract amendments to be effective October 4, 1985, 1987 or 1989....

. . . .

The arbitration panel shall consist of three impartial members to be designated by agreement of the parties. If the parties fail to agree on the three impartial members of the panel by August 3, 1985, 1987 or 1989, the impartial members shall be designated by the American Arbitration Association, in accordance

---

**3.** The no-reduction clause in Union Option B prohibits the League from seeking to reduce wages, the cost of living formula or other benefits or terms and conditions under the Contract during interest arbitration. *The district court decision did not prohibit the reduction of wages, benefits or conditions pending a decision by the interest arbitration panel.*

with its Voluntary Labor Arbitration Rules, except that no administrative appointment may be made pursuant to such Rules.

. . . .

The parties shall agree which specified issues have been settled through collective bargaining and which specified issues are to be submitted to arbitration. If no agreement can be reached on the issues to be specified by the appropriate August 10, the Union and the League shall submit on the appropriate August 10 their separate lists in writing to the arbitration panel and to each other. On or before August 15, the Union and the League shall submit to the arbitration panel and to each other a detailed written description supporting their respective positions on the issues before the panel for determination.

In addition to arbitration under Union Option B, the Contract also has a general arbitration clause. It provides: "The sole and exclusive remedy for any breach or alleged breaches of contract shall be the grievance procedures of the contract...." The Contract further states: "It is mutually agreed that the procedures provided in Part VI of th[e] Contract will be followed by both parties in the settlement of disputes."

Part VI of the Contract provides, in relevant part:

All differences of opinion on any question except as provided in Section 4, [which excludes jurisdictional disputes from the arbitration provisions,] arising under this Contract in League offices shall be submitted to the President of the Union, or his representative, and the President of the League, or his representative, for conciliation, and if conciliation fails, then and at all times said differences shall be submitted to a Joint Standing Committee.

. . . .

... When the Joint Standing Committee cannot reach an agreement, or when it is unable to render a decision within ten full business days after the final submission of the case, either party shall

have the right to a review by the Designated Arbitrator provided for in the Special Agreement. The decision of the Designated Arbitrator shall be final and binding on both parties to this Contract.

The above-referenced portion of the Special Agreement, Article 13, provides:

In the event that the Joint Standing Committee is unable to agree, the issue shall be submitted to the Designated Arbitrator to be selected by the Executive Vice–President of the Printers League and the President of New York Typographical Union No. 6. His decisions shall be final and binding.

This is not the first time that the Union and the League have disagreed over interest arbitration under the Contract. In 1985, after the League's members voted to reject a tentative agreement *inter alia* to extend the Contract until 1992, the Union invoked Union Option B. The parties submitted to the Designated Arbitrator the issue of whether the Contract imposed any limits on proposals that could be submitted to the interest arbitration panel. The Designated Arbitrator concluded that there were "no limits on proposed Contract amendments" except that the Union's proposal to extend the agreement to 1992 was barred by the Contract's non-extension clause. The instant dispute was not submitted to the Designated Arbitrator.

By its terms, the general arbitration provision seems to cover disputes over the permissible scope of interest arbitrations under Union Option B, which could be characterized as disputes over "alleged breaches of contract" or as questions "arising under th[e] Contract."

The question of whether the Union may invoke Union Option B interest arbitration procedures unquestionably depends on interpreting the Contract and determining the respective rights and obligations of the parties under the Contract. Moreover, one of the few truly unambiguous terms of the Contract provides that "[a]ll differences of opinion on any question except as provided in Section 4, [which excludes jurisdictional disputes from the arbitration provisions,] arising under this Contract ... shall be

**6**

submitted" first to the respective presidents of the Union and the League, then to the "Joint Standing Committee," and finally to the Designated Arbitrator, whose decision "shall be final and binding on both parties to this Contract." *See* Contract §§ 70–72. The "difference of opinion" concerning the applicability of Union Option B was thus not for the district court or for the interest arbitrators to decide.

We remand to give the Union the opportunity to move to compel arbitration before the Designated Arbitrator. *See United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960). The League is of course free to argue that the dispute is not arbitrable because the Contract has expired or to raise procedural objections it may have at this time. We express no view on those questions. If the district court determines that the dispute is not arbitrable, it shall enter judgment for the League. If the district court decides the dispute is arbitrable, the parties shall be directed to proceed to arbitration.